UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LODI MEMORIAL HOSPITAL ASSOCIATION, a California non-profit public benefit corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>TIGER LINES, LLC, a California limited liability company; GROUP & PENSION ADMINSTRATORS, INC., a Texas corporation; and DOES 1 through 25, inclusive,<br><br>            Defendants. | No. 2:15-cv-00319-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Lodi Memorial Hospital Association ("Plaintiff") seeks additional payment for medical services it provided to patients insured under the self-insured medical plan ("Plan") administered by Defendants Tiger Lines, LLC ("Tiger Lines") and Group & Pension Administrators, Inc. ("GPA") (collectively, "Defendants"). Plaintiff's lawsuit, which it originated in state court, was subsequently removed here on grounds that Plaintiff's claims are completely preempted by the provisions of the Employee Retirement Income Security Act ("ERISA") § 502(a).[1]

///

---

[1] ERISA is codified in the United States Code at 29 U.S.C. § 1001 et seq.

1

Presently before the Court is Defendants' Motion to Dismiss (ECF No. 5) brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that Plaintiff's state law claims for quantum meruit and for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ('UCL") fail because they conflict with ERISA and are therefore preempted under § 514(a) of the Act.  In addition to opposing Defendants' Motion to Dismiss, Plaintiff requests via its opposition that the Court remand this matter on grounds that none of Plaintiff's claims were preempted in the first place.  For the reasons set forth below, Plaintiff's Motion to Remand is DENIED, and Defendants' Motion to Dismiss is GRANTED with leave to amend.[2]

**BACKGROUND**

During 2013 and 2014, Plaintiff provided medical assistance to a number of Tiger Lines employees.  Pl.'s Compl. ¶ 10.  Those employees were enrolled members and/or beneficiaries of a health plan, which is self-funded, sponsored and/or administered by Defendants ("Plan").  Id. ¶ 8; Plan Document, Ex. B to Pl.'s Compl., ECF No. 1-2, p. 5.[3]  The Plan Document sets forth the terms and provisions under which the Plan pays benefits.  A medical provider obtains an assignment of benefits and bills the Plan directly for goods and services provided to a patient covered by the Plan.  The Plan then pays benefits directly to that medical provider.  Id. at p. 65, 94.

According to Plaintiff, it provided goods and services to certain patients covered by the Plan on 67 separate occasions and thereafter submitted claims to the Plan for payment.  Compl., ¶¶ 8, 10, 12 and Ex. A thereto.  The total charges billed to the plan for that treatment were $502,687.89.  Id. at ¶ 11.  Plaintiff alleges that Defendants failed to pay the claims properly and remitted only $31,568.04.  Id. at ¶ 13.  According to Plaintiff,

---

[2] Because oral argument would not have been of material assistance, this matter was submitted on the briefing.  E.D. Cal. Local R. 230(g).

[3] Page references to the Plan Document are to its original pagination and not to the page numbers assigned to the Plan Document as an Exhibit.

it is still owed at least $450,965.07, exclusive of interest, and it now seeks to recover those funds. Id.

Plaintiff's lawsuit, originally filed on December 22, 2014, in San Joaquin County Superior Court, contains two state law claims for quantum meruit and for UCL violations as stated above. On February 6, 2015, Defendants removed that action to this Court on grounds that its state law claims were completely preempted by ERISA. Shortly after removing the case to this Court, Defendants filed the present Motion to Dismiss, arguing that Plaintiff's state law claims conflict with the provisions of ERISA and must accordingly be dismissed on that basis. Defendants also allege that because the Plan's sole obligation to pay is set forth in the plan document itself, and since Plaintiff has been paid all it was entitled to receive under that document, Plaintiff cannot state a viable ERISA claim and the instant lawsuit should be dismissed in its entirety. In opposition, Plaintiff asserts most prominently that because this Court lacks jurisdiction over Plaintiff's claims in the first instance, its lawsuit should be remanded back to state court.

Defendants correctly point out that the "Motion for Remand" Plaintiff incorporates within its Opposition technically runs afoul of the provisions of Eastern District Local Rule 230(e), which permits the filing of a counter motion by way opposition only when such a motion is related to the subject matter of the original motion, here a Motion to Dismiss. As set forth below, the issue on remand revolves around whether this matter is completely preempted for jurisdictional purposes, while the Motion to Dismiss requires an assessment of conflict preemption as to the viability of the state claims themselves. Defendants, however, have represented that they had sufficient time to respond to Plaintiff's remand request in their reply brief and that they therefore do not object to the Court hearing the Motion to Remand. Accordingly, both Motions will be considered below.

///

///

///

3

# STANDARD

### A. Motion to Remand

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

The district court determines whether removal is proper by first determining whether a federal question exists on the face of the plaintiff's well-pleaded complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). If a complaint alleges only state-law claims and lacks a federal question on its face, then the federal court must grant the motion to remand. See 28 U.S.C. § 1447(c); Caterpillar, 482 U.S. at 392. Nonetheless,

4

there are rare exceptions when a well–pleaded state-law cause of action will be deemed to arise under federal law and support removal. They are "(1) where federal law completely preempts state law, (2) where the claim is necessarily federal in character, or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." ARCO Envtl. Remediation L.L.C. v. Dep't of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney fees accrued in response to the defendant's removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

**B. Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

Generally, a cause of action arises under federal law only "when the plaintiff's well pleaded complaint raises issues of federal law." Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 944 (9th Cir. 2009). Exclusive federal jurisdiction can nonetheless be conferred "in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state law claim." Id. at 945.

ERISA represents one such instance. ERISA was enacted by Congress in 1974 to regulate employee benefits plans and in so doing to protect the interests of plan participants and their beneficiaries. It provides a "federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan." Reynolds Metals Co. v. Ellis, 202 F.3d 1246, 1247 (9th Cir. 2000) (citing 29 U.S.C. §1132(e)(1)).

The scope of ERISA regulation is sweeping. Section 502(a)(1)(B) permits a civil action by a participant or beneficiary allows the participant or beneficiary of an ERISA plan 'to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). If a state law action seeks such relief, it must be pursued as a federal claim under ERISA. This is because, as the Supreme Court has recognized, § 502(a) demonstrates a Congressional intent to "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63-64 (1987).

ERISA therefore provides for complete preemption and confers exclusive federal jurisdiction. "Complete preemption removal is an exception to the otherwise applicable rule that a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." Marin Gen., 581 F.3d at 945 (internal quotation marks and citation omitted). As the Ninth Circuit further notes, however, "complete preemption under § 502(a) is really a jurisdictional rather than a

preemption doctrine," since it in fact confers federal jurisdiction given Congress' broad intention to override any competing state law. Id.

The Supreme Court has developed a two-prong test for determining whether a state-court cause of action is completely preempted under § 502(a): (1) "an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)", and (2)"there is no other independent legal duty that is implicated by a defendant's actions." Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). Davila's two prong test is in the conjunctive. Complete preemption occurs only if both prongs of the test are satisfied. Marin Gen., 581 F.3d at 947.

If complete preemption is present under a Davila analysis, and the case is properly in federal court, the next step is to determine whether the state law claims upon which federal jurisdiction has been conferred survive so-called "conflict preemption" under ERISA § 514(a). See 29 U.S.C. § 1144(a)   Under § 514(a), state law claims that "relate to" an ERISA cause of action "conflict" with ERISA and are therefore precluded, even if their effect on ERISA "is only indirect." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). State tort law and implied contract remedies are conflict preempted even when ERISA does not authorize a similar cause of action. Olson v. Gen. Dynamics Corp., 960 F.2d 1418, 1424 (9th Cir. 1991).

### A.   Motion to Remand

Because Plaintiff's Motion to Remand concerns this Court's jurisdiction to hear this matter, it must necessarily be addressed first. Plaintiff contends its case fails to meet either prong of the two-prong complete preemption test set forth in Davila and that, consequently, federal jurisdiction is lacking. The first Davila prong requires that Plaintiff is or was able, at some point, to bring an ERISA claim. Plaintiff contends that because health care providers are not enumerated parties listed in ERISA's civil enforcement provisions, Plaintiff had no ability to bring an ERISA claim. While Plaintiff is correct that the first prong of the Davila test contemplates an individual bringing ERISA claims, and although that individual is typically the insured plan member himself, derivative standing

8

is nonetheless permitted when the insured assigns his benefits and rights under the plan to a healthcare provider.  See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1291 (9th Cir. 2014).

To avoid this, Plaintiff claims that there is "no allegation that Lodi Memorial obtained such assignments" and that, accordingly, Plaintiff lacks standing to pursue an ERISA claim.  See Opp'n, 7:9-21.  However, the fact that the Complaint is silent on the issue of assignment, however, does not end the inquiry.  Since Plaintiff's Motion to Remand challenges the basis of the court's jurisdiction, the Court may consider evidence outside the pleading.  See Doctors Med. Ctr. of Modesto, Inc. v. Principal Mut. Life Ins. Co., No. CIV. 08-1496, 2008 WL 4790534 at *3 (E.D. Cal. Sept. 2, 2008); Bankhead v. American Suzuki Motor Corp., 529 F. Supp. 2d 1329, 1333-34 (M.D. Ala. 2008).  Here, Defendants have submitted the declaration of Madalyn Straughan, GPA's Vice President of Operations, which attests to the fact that for each claim form submitted by Plaintiff for payment, "Lodi Memorial indicated that it had received an assignment of benefits from the patient" which authorized them to make the claim on the patient's behalf.  Straughan Decl., attached to Defs.' Reply, ¶ 4.  Ms. Straughan's declaration further attaches an example of a claims form submitted by Plaintiff reflecting just such an assignment.

Even aside from the Straughan Declaration, the Complaint itself alleges that Plaintiff billed the Plan directly and received payment directly from the Plan.  Compl., ¶¶ 12-13.  This is only possible with an assignment of benefits.  See Plan Document, Ex. B. to Pl.'s Compl., p. 67.   As an assignee of Plan beneficiaries, Plaintiff has Article III standing to bring claims for payment of benefits under ERISA.  Consequently, Plaintiff's contention that it cannot qualify under the first prong of Davila is simply wrong.

Plaintiff's reliance on Lodi Memorial Hospital Ass'n, Inc. v. American Pacific Corp., No. 2:14-cv-08165-JAM-DAD, 2014 WL 5473540 (E.D. Cal. Oct. 20, 2014), is equally misguided.  In that case, Plaintiff entered into a written agreement with a company that entered into contracts with organizations offering health care insurance.  In exchange, the company agreed to bind those organizations, which included Defendant American

9

1    Pacific, to pay Plaintiff under the terms of the written agreement.  After a dispute ensued
2    with respect to the payment of Plaintiff's claims, Defendant alleged that under the terms
3    of the agreement it was required to pay only in accordance with the ERISA employee
4    benefit plan maintained by Defendant for its employees.  Plaintiff filed suit, like it did in
5    this case, on several state law causes of action including quantum meruit and a statutory
6    claim.  The court granted Plaintiff's motion to remand on grounds that "complete
7    preemption" was lacking, but did so on grounds that there was no evidence or argument
8    that Lodi Memorial had an assignment which gave it standing to pursue an ERISA claim.
9    Id. at *4.  The first prong of the Davila test therefore could not be met.  Here, on the other
10   hand, as stated above, evidence of assignment has been submitted in the form of
11   Madalyn Straughan's declaration and its attachment as discussed above.

12        Plaintiff also relies on the Marin General case for the proposition that it could not
13   have made claims under ERISA for the additional payments it seeks, that complete
14   preemption is therefore lacking, and that, accordingly, the case should be remanded
15   back to state court.  That reliance also lacks merit.

16        In Marin General, the hospital alleged that during a phone call with the ERISA
17   plan's agent to verify coverage for a patient, the agent promised the plan would pay
18   90 percent of that patient's medical expenses at the hospital.  Marin Gen., 581 F.3d at
19   943.  The court determined that the hospital could not have brought its claims for
20   additional compensation under ERISA, since it alleged breach of an independent oral
21   promise rather than a failure to pay benefits payable under an ERISA plan.  Id. at 949.
22   The hospital's claims in Marin General therefore arose from a legal duty created by the
23   oral promise and not by the terms of the ERISA plan document.  Id. at 950.  That
24   independent duty precludes reliance on either of Davila's two prongs, which premise
25   complete preemption both on the availability of ERISA as a remedy and the lack of any
26   obligation separate from ERISA.  Here, on the other hand, in alleging that the
27   Defendants improperly paid less than the full amount of Plaintiff's billings, Plaintiff
28   identifies no independent contract, agreement or obligation apart from obligations under

10

the plan agreement itself.  Marin General's holding that the hospital there had identified grounds apart from ERISA in claiming its entitlement to additional monies therefore has no bearing on the present case where no such independent obligation has been shown.

Finally, Plaintiff contends it should be permitted to premise its UCL claims, which are intended to remedy unlawful, unfair or fraudulent business acts or promises, on a violation of California Health and Safety Code § 1371.4.  That statute requires that health care service plans reimburse providers for emergency services provided to their insureds, whether or not the services were preauthorized.  Plaintiff claims that § 1371.4 therefore creates an independent obligation to pay benefits to which ERISA does not apply.  There are several problems with this argument.  First, as Defendants point out, the Complaint nowhere makes any reference to a violation of § 1371.4.  Second, the Ninth Circuit has already determined that such claims are completely preempted. Cleghorn v. Blue Shield of California, 408 F.3d 1222 (9th Cir. 2005).   In Cleghorn, the court found that a plaintiff's claims against a health care service plan for denial of a claim for emergency room bills were completely preempted by ERISA, and it rejected any argument that § 1371.4 can be enforced in the face of an ERISA claim.  Id. at 1227.  As the Ninth Circuit explained, "[t]he only factual basis for relief pleaded in Cleghorn's complaint is the refusal of Blue Shield to reimburse him for the medical care he received. Any duty or liability that Blue Shield had to reimburse him 'would exist here only because of [Blue Shield's] administration of ERISA-regulated benefit plans.'"  Id. at 1226, citing Davila, 542 U.S. at 213.

Importantly, too, even if § 1371.4 were not completely preempted by ERISA, which the Court believes it is, the statute is inapplicable in any event to the facts of the present case.  Section 1371.4, which is part of the Knox-Keene Health Care Service Plan Act of 1975, applies only to health care service plans and specialized health care service plan contracts, and not to self-funded plans or health insurance policies.  See Scripps Clinic v. Superior Court, 108 Cal. App. 4th 917, 938, n.5 (2003).  As a self-funded ERISA plan (see Plan Document, Ex. B to Pl.'s Compl., ECF No. 1-2, p. 5), it

1  would appear that § 1371.4 therefore does not extend to this case in the first place.
2  Consequently, Plaintiff's attempt to rely on § 1371.4 to create an independent duty falling
3  outside of Davila fails.
4     In sum, since Plaintiff cannot escape the two-pronged test of Davila under the
5  circumstances of the present matter, Defendants' removal on the basis of complete
6  preemption under § 402(a) was proper, and this Court has jurisdiction.  Plaintiff's Motion
7  for Remand must therefore be denied.

       **B.    Motion to Dismiss**

9     Having determined that it has jurisdiction to hear the case, this Court must next
10 determine whether Plaintiff's state law claims are in fact barred by the preemptive force
11 of ERISA.  Defendants' Motion to Dismiss is made on grounds that both claims asserted
12 by Plaintiff, for quantum meruit and for UCL violations, conflict with ERISA and fail on
13 that basis, thereby making dismissal appropriate.
14    Conflict preemption under ERISA § 514(a) is an affirmative defense arising when
15 a provision of state law "relates to" an ERISA benefit plan.  Marin Gen., 581 F.3d at 945.
16 State law "relates to" an ERISA benefit plan if there is a connection with or reference to
17 such a plan.  Abraham v. Norcal Waste Sys., 265 F.3d 811, 820 (9th Cir. 2001).  State
18 common law tort and contract actions asserting improper processing of a claim for
19 benefits under an employee benefit plan are generally preempted by ERISA.  29 U.S.C.
20 § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 (1987); Metro Life Ins. Co. v.
21 Taylor, 481 U.S. 58, 62 (1987).  As indicated above, state laws relate to an ERISA plan
22 for purposes of preemption "even if the law is not specifically designed to affect such
23 plans, or the effect is only indirect."  Ingersoll-Rand, 498 U.S. at 139.
24    The gravamen of both state law causes of actions pled in this case is that
25 Plaintiff's claims for benefits were improperly paid, with some $450,965.07 owed on
26 claims totaling $502,687.89.  ERISA, however, preempts state law causes of action
27 based on improper payment of claims for medical benefits, as Plaintiff alleges here.
28 Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 493 (9th Cir. 1988); Fresno Comm.

Hosp. & Med. Ctr. v. Souza, No. CV F 07-0325, 2007 WL 2120272 at 4-6 (E.D. Cal. July 23, 2007).  Moreover, the Ninth Circuit's Cleghorn decision specifically found that ERISA preempts statutory claims for violations of California's UCL, one of the state law causes of action pled here.  See Cleghorn, 408 F.3d at 1222, 1227.  With respect to the remaining quantum meruit claim, the Souza court found that claim to be preempted as well, since its merits depend upon obligations under an ERISA plan and require interpretation of the Plan's terms.  Souza, 2007 WL 2120272 at *4-6.  Where the Plan's sole obligation to pay is squarely set forth in ERISA plan documents, Plaintiff cannot recover for the reasonable value of the services it provided under a quantum meruit theory.  See Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1420 (1996) (holding that claim for quantum meruit does not lie where there are actual contract terms governing payment).

Absent any basis independent from the provisions of the Plan for Plaintiff's claim that it is owed more for services provided than it has already received, a contention Plaintiff has not made as stated above, the viability of both of Plaintiff's claims must necessarily rest on a claim that Plaintiff is owed more under the provisions of the Plan itself.  Such a claim, however, premised on Defendants' obligations to provide benefits to patients pursuant to the terms of the Plan, clearly relates to ERISA.  Id.  As such, both of Plaintiff's current causes of action conflict with ERISA and those claims must be dismissed on that basis.

Assuming that Plaintiff cannot identify any obligation bringing this case outside of the purview of ERISA, Plaintiff is left with the ability only to plead a federal ERISA claim rather than the two state law claims it currently is pursuing.  Defendants allege it would be futile for Plaintiff to pursue an amended claim sounding in ERISA only because the Plan here does not authorize any additional payments.  Plaintiff has not pled how it is entitled to additional claims under the ERISA plan itself, and Plaintiffs must allege the specific plan term violated in order to state a claim under ERISA, since ERISA plans are only required to pay the benefits outlined in the employee benefit plan documents.  See

Steelman v. Prudential Ins. Co. of Am., No. CIV. S-06-2746, 2007 WL 1080656 at *6-7 (E.D. Cal. Apr. 4, 2007); see also in re WellPoint, Inc. Out-of-Network "UCR" Rates Litig., 865 F. Supp. 2d 1002, 1040 (C.D. Cal. 2011)   Defendants, for their part, argue that their payments do comply with the Plan's obligations, and Plaintiff to date has presented no evidence suggesting that contention is incorrect.  Therefore, while the Court will permit Plaintiff to file an amended pleading, assuming that it does not identify any independent obligation taking this matter outside the scope of ERISA, any claim for additional benefits under ERISA must set forth how the Plan entitles Plaintiff to additional compensation for the services it provided to Plan members.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 8) is DENIED and Defendants' Motion to Dismiss (ECF No. 5) is GRANTED.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file an amended complaint.  If no amended complaint is timely filed, this case will be dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  August 20, 2015

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT