UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LODI MEMORIAL HOSPITAL ASSOCIATION, a California non-profit public benefit corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>TIGER LINES, LLC, a California limited liability company; GROUP & PENSION ADMINSTRATORS, INC., a Texas corporation; and DOES 1 through 25, inclusive,<br><br>            Defendants. | No.  2:15-cv-00319-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Lodi Memorial Hospital Association ("Plaintiff") seeks additional payment for medical services it provided to patients insured under the self-insured medical plan ("Plan") administered by Defendants Tiger Lines, LLC ("Tiger Lines") and Group & Pension Administrators, Inc. ("GPA") (collectively, "Defendants").  Plaintiff's lawsuit, originally filed in state court, was subsequently removed here on grounds that Plaintiff's claims are completely preempted by the provisions of the Employee Retirement Income Security Act ("ERISA").[1]  By Memorandum and Order filed August 20, 2015 (ECF No. 14), the Court granted

---
[1] ERISA is codified in the United States Code at 29 U.S.C. § 1001 et seq.

1

1  Defendants' Motion to Dismiss Plaintiff's state law claims for quantum meruit and for
2  violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.
3  on grounds that those claims, as stated, conflicted with ERISA and were thereby
4  preempted.  Leave to amend was granted and, on September 8, 2015, Plaintiff filed a
5  First Amended Complaint ("FAC") purporting to state claims for:  1) breach of oral
6  contract; 2) breach of implied-in-fact contract; and 3) negligent misrepresentation.  ECF
7  No. 15.
8       Presently before the Court is Defendants' Motion to Dismiss (ECF No. 16) that
9  FAC, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that
10 Plaintiffs have still failed to state a claim upon which relief can be granted.  Alternatively,
11 Defendants allege that they cannot be expected to respond to Plaintiff's claims as
12 currently pleaded and move for a more definite statement of those claims under Rule
13 12(e).  As set forth below, Defendant's Motion under Rule 12(e) will be granted.
14 Inasmuch as Plaintiff will be afforded a further opportunity to state a viable claim,
15 Defendants' Motion to Dismiss will be denied without prejudice to being renewed should
16 that be appropriate.[2]

**BACKGROUND**

20      During 2013 and 2014, Plaintiff provided medical assistance to a number of Tiger
21 Lines employees.  FAC, ¶¶ 8, 10.  Those employees were enrolled members and/or
22 beneficiaries of a health plan sponsored and/or administered by Defendants ("Plan"). Id.
23 ¶ 8. Defendants' Plan is self-funded.  Plan Document, Ex. B to Defs.' Notice of
24 Removal, ECF No. 1-2, p. 5.[3]  The Plan Document sets forth the terms and provisions
25 under which the Plan pays benefits.  When a medical provider obtains an assignment of

---

[2] Because oral argument would not have been of material assistance, this matter was submitted on the briefing.  E.D. Cal. Local R. 230(g).

[3] Page references to the Plan Document are to its original pagination and not to the page numbers assigned to the Plan Document as an Exhibit.

2

benefits and bills the Plan directly for goods and services provided to a patient covered by the Plan, the Plan pays benefits directly to that medical provider. Id. at p. 65, 94.

According to Plaintiff, it provided goods and services to certain patients covered by the Plan on 56 separate occasions and thereafter submitted claims to the Plan for payment. FAC, ¶¶ 8, 10, 12 and Ex. A thereto. The total charges billed to the Plan for that treatment were $502,687.89. Id. at ¶ 11. Plaintiff alleges that Defendants failed to pay the claims properly and remitted only $31,568.04. Id. at ¶ 13. Plaintiff contends it is still owed at least $450,965.07, exclusive of interest, and now seeks to recover those funds. Id.

As indicated above, Plaintiff's lawsuit, originally filed on December 22, 2014, in San Joaquin County Superior Court, contained two state law claims for quantum meruit and for UCL violations. On February 6, 2015, Defendants removed that action to this Court on grounds that its state law claims were completely barred by ERISA. After the Court granted Defendants' Motion to Dismiss on grounds that Plaintiff had identified nothing taking the claims pled outside the scope of ERISA preemption, the FAC followed, purportedly stating three new state law claims. Defendants now challenge those claims on grounds they are impermissibly vague and should be dismissed, or alternatively should be subject to an order requiring Plaintiffs to make a more definite statement of their claims.

**STANDARD**

A motion for more definite statement pursuant to Rule 12(e) attacks "the unintelligibility of the complaint, not simply the mere lack of detail . . . ." Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005). Courts will deny the motion if the complaint is specific enough to give notice to the defendants of the substance of the claim asserted. Id. A Rule 12(e) motion should be granted only if the complaint is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial,

1  in good faith or without prejudice to himself." Cellars v. Pac. Coast Packaging, Inc., 189
2  F.R.D. 575, 578 (N.D. Cal. 1999); see also Bautista v. L.A. Cnty., 216 F.3d 837, 843 n.1
3  (9th Cir. 2000) (Reinhardt, J., concurring) (party can move for more definite statement on
4  those rare occasions where a complaint is so vague or ambiguous that party cannot
5  reasonably frame a responsive pleading).
6        "Rule 12(e) is designed to strike an unintelligibility rather than want of
7  detail . . . .  A motion for a more definite statement should not be used to test an
8  opponent's case by requiring him to allege certain facts or retreat from his allegations."
9  Neveu, 392 F. Supp. 2d at 1169 (quoting Palm Springs Med. Clinic, Inc. v. Desert Hosp.,
10  628 F. Supp. 454, 464-65 (C.D. Cal. 1986).  If the facts sought by a motion for a more
11  definite statement are obtainable by discovery, the motion should be denied.  See
12  McHenry v. Renne, 84 F.3d 1172, 1176 (9th Cir. 1996); Neveau, 392 F. Supp. 2d at
13  1169-70; Sagan v. Apple Computer, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).  "This
14  liberal standard of pleading is consistent with [Rule] 8(a)(2) which allows pleadings that
15  contain a 'short and plain statement of the claim.'  Both rules assume that the parties will
16  familiarize themselves with the claims and ultimate facts through the discovery process."
17  Neveu, 392 F. Supp. 2d at 1169 (citing Sagan, 874 F. Supp. at 1077 ("Motions for a
18  more definite statement are viewed with disfavor and are rarely granted because of the
19  minimal pleading requirements of the Federal Rules.")).
20
21                          **STATUTORY FRAMEWORK**
22
23        Generally, a cause of action arises under federal law only "when the plaintiff's well
24  pleaded complaint raises issues of federal law." Marin Gen. Hosp. v. Modesto & Empire
25  Traction Co., 581 F.3d 941, 944 (9th Cir. 2009).  Exclusive federal jurisdiction can
26  nonetheless be conferred "in certain instances where Congress intended the scope of a
27  federal law to be so broad as to entirely replace any state law claim." Id. at 945.
28  ///

4

1    ERISA represents one such instance.  ERISA was enacted by Congress in 1974
2    to regulate employee benefits plans and in so doing to protect the interests of plan
3    participants and their beneficiaries.   It provides a "federal cause of action for civil claims
4    aimed at enforcing the provisions of an ERISA plan." Reynolds Metals Co. v. Ellis,
5    202 F.3d 1246, 1247 (9th Cir. 2000) (citing 29 U.S.C. §1132(e)(1)).
6    The scope of ERISA regulation is sweeping.  Section 502(a)(1)(B) permits a civil
7    action by a participant or beneficiary of an ERISA plan 'to recover benefits due to him
8    under the terms of the plan,  to enforce his rights under the terms of the plan, or to clarify
9    his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).  If a
10   state law action seeks such relief, it must be pursued as a federal claim under ERISA.
11   This is because, as the Supreme Court has recognized, § 502(a) demonstrates a
12   Congressional intent to "so completely pre-empt a particular area that any civil complaint
13   raising this select group of claims is necessarily federal in character." Metropolitan Life
14   Insurance Co. v. Taylor, 481 U.S. 58, 63-64 (1987).
15    ERISA therefore provides for complete preemption and confers exclusive federal
16   jurisdiction.  "Complete preemption removal is an exception to the otherwise applicable
17   rule that a plaintiff is ordinarily entitled to remain in state court so long as its complaint
18   does not, on its face, affirmatively allege a federal claim." Marin Gen., 581 F.3d at 945
19   (internal quotation marks and citation omitted).  As the Ninth Circuit further notes,
20   however, "complete preemption under § 502(a) is really a jurisdictional rather than a
21   preemption doctrine," since it in fact confers federal jurisdiction given Congress' broad
22   intention to override any competing state law. Id.
23   The Supreme Court has developed a two-prong test for determining whether a
24   state-court cause of action is completely preempted under § 502(a): (1) "an individual, at
25   some point in time, could have brought the claim under ERISA § 502(a)(1)(B)"; and
26   (2) "where there is no other independent legal duty that is implicated by a defendant's
27   actions." Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  Davila's two prong test
28   ///

5

is in the conjunctive. Complete preemption occurs only if both prongs of the test are satisfied. Marin Gen., 581 F.3d at 947.

If complete preemption is present under a Davila analysis, and the case is properly in federal court, the next step is to determine whether the state law claims upon which federal jurisdiction has been conferred survive so-called "conflict preemption" under ERISA § 514(a). See 29 U.S.C. § 1144(a). Under § 514(a), state law claims that "relate to" an ERISA cause of action "conflict" with ERISA and are therefore precluded, even if their effect on ERISA "is only indirect." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). State tort law and implied contract remedies are conflict preempted even when ERISA does not authorize a similar cause of action. Olson v. Gen. Dynamics Corp., 960 F.2d 1418, 1424 (9th Cir. 1991).

## ANALYSIS

Defendants argue that despite Plaintiff's attempt by way of its FAC to state three new state-law causes of action, the nature of Plaintiff's allegations still makes it clear that they depend on the provisions of Defendants' employee benefit plan and consequently are preempted by ERISA. Plaintiff, on the other hand, argues it has identified agreements outside Defendants' Plan which take the dispute outside the purview of ERISA.

Conflict preemption under ERISA § 514(a) is an affirmative defense arising when a provision of state law "relates to" an ERISA benefit plan. Marin Gen., 581 F.3d at 945. State law "relates to" an ERISA benefit plan if there is a connection with or reference to such a plan. Abraham v. Norcal Waste Sys., 265 F.3d 811, 820 (9th Cir. 2001). State common law tort and contract actions asserting improper processing of a claim for benefits under an employee benefit plan are generally preempted by ERISA. 29 U.S.C. § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 (1987); Metro Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987). As indicated above, state laws relate to an ERISA plan

for purposes of preemption "even if the law is not specifically designed to affect such plans, or the effect is only indirect." Ingersoll-Rand, 498 U.S. at 139.

    Like its predecessor, the gravamen of the claims asserted by way of the FAC is that Plaintiff's claims for benefits were improperly paid, with some $450,965.07 owed on claims totaling $502,687.89. ERISA, generally preempts state law causes of action based on improper payment of claims for medical benefits. Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 493 (9th Cir. 1988); Fresno Comm. Hosp. & Med. Ctr. v. Souza, No. CV F 07-0325, 2007 WL 2120272 at 4-6 (E.D. Cal. July 23, 2007). Consequently, Plaintiff can escape the sweeping force of ERISA preemption only by identifying grounds independent from the provisions of the Plan itself in claiming it is owed more for services provided than already received. While the Court's August 20, 2015, Memorandum and Order found that Plaintiff had not sufficiently identified any basis outside the Plan for arguing its entitlement to additional payments, it permitted Plaintiff to amend its complaint to either show such entitlement or to demonstrate that that the Plan itself authorized further reimbursement (which would permit an ERISA claim under the Plan).[4]

    Plaintiff's FAC makes no effort to allege that the payments under the terms of the Plan were not proper.[5] Instead, the FAC asserts that when Plaintiff contacted Defendants and spoke to its representatives to verify patient eligibility under Defendants' health plan, those representatives "orally represented" that "Lodi Memorial would be reimbursed for the medically necessary services provided. . . at 100% of Lodi Memorial's usual and customary total billed charges." FAC, ¶16. According to Plaintiff, the resulting

---

[4] Plaintiff purports to object to any previous finding by the Court that because Plaintiff submitted bills to Defendants by way of patient assignment of benefits, Plaintiff's claims must necessarily be governed by the provisions of Defendants' Plan. That contention, however, mischaracterizes the Court's prior ruling. To the extent Plaintiff can identify separate and independent agreements for reimbursement, the Court's August 20, 2015, Memorandum and Order made it clear that Plaintiff can potentially state a claim surviving ERISA preemption. Instead, the Court simply found that in alleging that Defendants improperly paid less than the full amount of Plaintiff's billings, Plaintiff's initial complaint identified "no independent contract, agreement or obligation apart from obligations under the plan agreement itself." See Mem. and Order, ECF No. 14, 10:28-11:1. The FAC now attempts to rectify that deficiency.

[5] Indeed, Plaintiff's opposition appears to concede that its action is not intended to recover benefits due under the ERISA plan itself. Pl.'s Opp'n, 3:3-5

oral contract was breached when Defendants failed to pay Plaintiff's bills in their entirety as promised.

In addition to alleging breach of the above-claimed oral argument, Plaintiff further argues that there was an implicit, implied-in-fact contract that Defendants would pay 100% of Plaintiff's usual and customary total billed charge in treating beneficiaries under Defendants' health plans. Id. at ¶¶ 21-22.  Finally, Plaintiff also contends that by falsely representing that Plaintiff would be fully paid for all treatment provided to Defendants' beneficiaries when it had no intention of doing so, Defendants' agents engaged in negligent misrepresentation since Plaintiff relied on those false statements. Id. at ¶¶ 29-31.

Aside from attaching a spreadsheet which purports to identify 56 different incidents of treatment provided to Defendants' beneficiaries, along with the total amount billed and the amounts received as compensation for Plaintiff's services, the FAC provides no further specifics as to just what representations were made or when Defendant's agents made the alleged promises to pay all of Plaintiff's charges.  Nor does Plaintiff allege the identity of the agents who made the claimed representations to pay Plaintiff's bills in their entirety.

The Court agrees that Defendants are entitled to know such basic facts concerning the claimed representations and how they support the assertion of either breach of an oral or implied-in-fact contract.  Moreover, with regard to negligent misrepresentation, those claims must be pled with particularity in accordance with Rule 9(b), and they are not.  See, e.g., Meridian Project Sys. v. Hardin Constr. Co., 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005).

In opposing Defendants' motion, Plaintiff states only that "[i]ncluding more specific allegations for each claim, such as the dates of the communications and the specific persons involved, would result in a very lengthy pleading." Pl.'s Opp'n, 2:16-18. Plaintiff's claim that its pleading could thereby become unwieldy does not excuse the total dearth of any specifics from its currently operative FAC.  While Plaintiff need not

necessarily include specifics as to each and every one of the 56 alleged admissions for which representations were made, it must provide enough illustrative examples to give Defendants adequate notice of just what kind of representations are allegedly involved. With no specifics at all, Defendants cannot be expected to properly respond to Plaintiff's lawsuit.

## CONCLUSION

For the reasons set forth above, Plaintiff will be permitted to further amend its pleadings to provide further factual detail concerning the promises it claims Defendants' agents made to the effect that patient billings would be remitted in full.  Defendants' Motion (ECF No. 16) is therefore GRANTED to the extent it asks that Plaintiff be required to provide a more definite statement of its claims in accordance with Rule 12(e). Pending that opportunity to offer enough factual specificity to state a potentially viable claim, however, Plaintiff's request for dismissal under Rule 12(b)(6) is DENIED without prejudice to being renewed should Plaintiff's further effort to amend prove unavailing.

Plaintiff is directed to file its Second Amended Complaint not later than thirty (30) days following the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated:  May 12, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE